[Cite as *In re R.S.*, 2015-Ohio-271.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. John W. Wise, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Craig R. Baldwin, J. |
| IN RE R.S. | : |  |
|  | : | Case No. 2014 AP 09 0037 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division, Case No. 13JN00278 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | January 15, 2015 |

APPEARANCES:

For Appellant-Mother:

JOHN BRECHBILL
Assistant Public Defender
153 N. Broadway
New Philadelphia, OH 44663

For Appellee-TCDJFS:

DAVID HAVERFIELD
389 – 16th St. SW
New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellant-Mother appeals the August 28, 2014 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of her child to Appellee-Tuscarawas County Department of Job and Family Services.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Appellant-Mother is the mother of R.S. The father of R.S. is unknown.

{¶3}   R.S. was born on June 14, 2013. He was born three months premature and weighed three pounds at birth. R.S. and Mother came to the attention of Appellee-Tuscarawas County Department of Job and Family Services ("TCDJFS") when R.S.'s doctor reported to TCDJFS that R.S. was failing to thrive. The doctor was concerned that R.S. was not gaining weight and Mother would not cooperate with the doctor to treat R.S.

{¶4}   On July 31, 2013, TCDJFS filed an ex parte order for temporary custody of R.S. On August 1, 2013, TCDJFS filed a complaint alleging R.S. was a neglected and dependent child. A shelter care hearing was held where R.S. was placed in the temporary custody of TCDJFS. An adjudication hearing was held on August 29, 2013. The complaint was amended to allege only dependency. The parties stipulated R.S. was dependent and he was placed in the temporary custody of TCDJFS. A case plan was adopted for Mother. The case plan required Mother to obtain an income to be able to care for R.S.'s needs, obtain housing, obtain a psychological evaluation, take parenting classes, and to determine if she was eligible for developmental disability services.

{¶5} R.S. was placed with a foster family. In September 2013, R.S. was diagnosed with Pearson Syndrome. Pearson Syndrome is a rare mitochondrial disease. Children with Pearson Syndrome present with sideroblastic anemia and failure to thrive due to the failure of the pancreas to digest food. Children with the disease often pass away in the first two years of their life. Children with Pearson Syndrome take multiple medications. They require frequent blood transfusions because of the anemia. A child with Pearson Syndrome is prone to infections and the child can die if they do not receive treatment for even mild illnesses. If the child survives, the child will develop another syndrome called Kaern-Sayer's Syndrome. The child will have muscle weakness, cardiac induction blocks requiring a pacemaker, diabetes, hearing loss, night blindness, digestive problems, and possibly dementia.

{¶6} Mother lived with a female roommate. TCDJFS placed the roommate on a case plan as well. The roommate provided Mother with financial and emotional support.

{¶7} TCDJFS filed a motion for permanent custody on February 7, 2014. Mother filed a motion to extend temporary custody on February 14, 2014. The hearing on the motion was held on May 8, 2014.

{¶8} R.S. was under the care of Dr. Cohen, a pediatric neurologist with Akron Children's Hospital. Dr. Cohen testified at the hearing as to the nature of R.S.'s condition.

{¶9} Jaime Grunder, ongoing case manager with TCDJFS testified at the hearing. Ms. Grunder stated that Mother, for the most part, met her case plan objectives. Mother did not have an income. She was unemployed and she applied for Social Security disability benefits but was denied. Mother relied on food stamps and her

roommate for financial support. Without her roommate, Mother would have no source of income. Mother checked with developmental disability services and was told she did not qualify. Mother completed parenting classes and took individual parenting classes with Wendy Smitley.

{¶10} Ms. Grunder testified that while Mother complied with her case plan objectives, the concerns that precipitated the complaint for dependency were not remedied in regards for caring for R.S., a child with very special health needs. Ms. Grunder stated that there were concerns for Mother's personal hygiene. Ms. Grunder witnessed Mother fall asleep during her visitation with R.S. Ms. Grunder did not believe Mother could adapt and cope with the level of care that R.S. needed.

{¶11} Wendy Smitley, social service aide with TCDJFS, testified at the hearing. Ms. Smitley has been providing supervised visitation and individual parent education for Mother since August 2013. Mother visited with R.S. from 9:30 a.m. to 11:30 a.m. on Thursdays. Ms. Smitley testified Mother struggled to adapt to R.S.'s changing needs, especially feeding and sleeping. She would provide Mother with instruction, which Mother would not consistently retain and utilize at future visits. Mother's roommate would attend visitations with Mother. The roommate would help Mother care for R.S., but the roommate exhibited frustration when caring for R.S. if he was fussy.

{¶12} The foster parent of R.S. testified at the hearing as to the level of care R.S. required to maintain his health. R.S. had a regimen of medication that R.S. must take at specific times during the day. The foster parents avoided large, crowded areas because R.S.'s white blood count was very low. The home was kept clean to avoid bringing germs into the home environment. R.S. saw a hematologist at Akron Children's

Hospital every two or three weeks to monitor his blood counts. The foster parents watched R.S.'s behavior and demeanor closely to determine if R.S. was getting sick or if his red blood cells were low. The foster parents were bonded with the child and understood the long-term prognosis for R.S. The foster parents wanted to adopt R.S. If they did adopt R.S., they planned to allow Mother to have contact with R.S.

{¶13} Mother testified she was able to care for R.S. and his special needs. She missed R.S. and wanted him to come home with her. She thought the foster parents were taking very good care of R.S.

{¶14} The guardian ad litem recommended that considering the health care needs of R.S., TCDJFS should be granted permanent custody of R.S.

{¶15} On August 28, 2014, the trial court issued its judgment entry granting permanent custody of R.S. to TCDJFS. The trial court found the child could not or should not be placed with Mother within a reasonable time. It determined the evidence demonstrated TCDJFS made reasonable efforts to remedy the problem that caused the removal of the child, but the conditions that caused the removal were not remedied. The trial court found it was in the best interest of the child to be placed in the permanent custody of TCDJFS.

{¶16} It is from this decision Mother now appeals.

**ASSIGNMENT OF ERROR**

{¶17} Mother raises one Assignment of Error:

{¶18} "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS SAID DECISION WAS NOT SUPPORTED BY

CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶19} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

## ANALYSIS

{¶20} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶21} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶22} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶23} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶24} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶25} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶26} In the present case, the trial court found that despite the efforts of TCDJFS, the child could not be placed with Mother within a reasonable period of time and should not be placed with Mother pursuant to R.C. 2151.414(E). R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child could not or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factors the court considers relevant.

{¶27} A trial court may base its decision that a child could not or should not be placed with a parent within a reasonable time upon the existence of any one of the R.C.

2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *In re Calhoun*, *supra*, at ¶ 38.

{¶28} Mother argues the evidence demonstrated she was in substantial compliance with her case plan requirements. Based on her substantial compliance, she moved the trial court to extend temporary custody for six months to allow her a reasonable amount of time to demonstrate her ongoing progress and compliance with case plan services. Mother states that TCDJFS moved for permanent custody only after six months; the limited period of time did not allow Mother to fully demonstrate her compliance and ability to care for R.S.

{¶29} In the trial court's judgment entry granting permanent custody to TCDJFS, the trial court found that while a six-month extension was legally possible, an extension would be of no benefit to R.S. Under this specific factual scenario, we agree with the trial court's conclusion. R.S. has a potentially fatal genetic disorder. His survival beyond the age of two-years-old depends not only on his doctors, but also on his caretakers. Dr. Cohen, R.S.'s doctor, testified that at the time of the hearing, R.S. was doing relatively well. In order for R.S. to continue to do well, Dr. Cohen stated his health depended on the vigilant management of the various facets of the disease:

> * * * [W]hat we, what we've observed in cases of, and it's vigilant management on, on, from the medical team and the caretaker team, because if we micro-, if the physicians micromanage the care, um, there's clearly, children with mitochondrial disease clearly do better than if there's not micro-management. But it's the parents who have to deliver that

management, and if that isn't delivered properly, you don't, you know, you

might as well not even have a medical team.

(Hrg., p. 15).

{¶30} Jaime Grunder and Wendy Smitley testified that Mother tried her best to care for R.S. during her visitations, but she would not consistently utilize the instructions provided to Mother for R.S.'s daily care, such as feeding and changing. R.S. required multiple medications to be taken throughout the day. He saw a physician at Akron Children's Hospital every two to three weeks to check his blood count. He required blood transfusions. If R.S. survived beyond two-years-old, his health care will require more management as he will develop diabetes, require a pacemaker, suffer from digestive problems, and possibly dementia. Grunder and Smitley also testified that Mother required instruction as to hygiene. If not properly treated, the common cold could be a fatal event for R.S. His foster parents did not take R.S. into crowds and kept the home clean to minimize R.S.'s exposure to germs.

{¶31} Mother argues the trial court relied on improper evidence to determine that the child could not and should not be placed with Mother within a reasonable time. For example, in the judgment entry, the trial court referred to Mother's psychological assessment where she was diagnosed with Intellectual Disability. This evidence was not presented at trial, but it was contained within the Guardian ad Litem's report. Even if this court discounts this information, there is still competent, credible evidence to support the trial court's determination that R.S. could not and should not be placed with Mother within a reasonable time. All children require care to maintain their health and happiness; however, the care R.S. requires to ensure his survival beyond two-years-old

goes far beyond the care needed by a healthy child. The evidence demonstrates that despite the efforts of TCDJFS, R.S. could not and should not be placed with Mother within a reasonable time.

{¶32} Mother does not challenge in her appellate brief the trial court's finding that it was in the best interest of the child to be placed in the permanent custody of TCDJFS. We find the trial court made the requisite considerations of the best interest factors under R.C. 2151.414(D). There is no doubt Mother loves R.S. The foster parents also love R.S. and understand his health care needs and his long-term prognosis. Dr. Cohen testified that R.S. was doing relatively well at the time of the hearing, which was while R.S. was being cared for by the foster parents. The foster parent testified that if they were to adopt R.S., they would allow Mother to have contact with R.S.

{¶33} For these reasons, we find that the trial court's determination that the child could not or should not be placed with Mother within a reasonable time was not against the manifest weight of the evidence. We further find that the trial court's decision that permanent custody to TCDJFS was in the child's best interest was not against the manifest weight or sufficiency of the evidence.

{¶34} Accordingly, Mother's sole Assignment of Error is overruled.

**CONCLUSION**

{¶35} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Wise, P.J. and.

Baldwin, J., concur.